J-S81028-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| HASAN MYERS | |
| Appellant | No. 2020 EDA 2015 |

Appeal from the Judgment of Sentence August 9, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0001048-2012

BEFORE:  BOWES, J., MOULTON, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY MOULTON, J.:                    **FILED MARCH 02, 2017**

Hasan Myers appeals from the August 9, 2013 judgment of sentence entered in the Philadelphia County Court of Common Pleas following his convictions for third-degree murder and possessing an instrument of crime ("PIC")[1].  We affirm.

The trial court summarized the facts as follows:

> On July 29, 2011 around 7:00 p.m., Shondra Wilder, a resident of Wilmot Street in Philadelphia, went outside to assist in bringing her children inside from their grandmother's vehicle.  Once outside, she observed [Myers] and another male standing behind her mother's vehicle, pointing down the street.  Ms. Wilder returned to her home, only to hear a loud boom just a few minutes later.  Rushing out to her front porch, Ms. Wilder saw

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 2502(c); 18 Pa.C.S. § 907(a).

[Myers] and his companion run in her direction away from the scene of a shooting with [Myers] carrying a large weapon. Initially thinking the boom was caused by a car accident, Ms. Wilder later observed decedent William "Esco" Parker [("victim")] lying unconscious in the street.

Erica Williams, also a resident of Wilmot Street, heard a loud gunshot from her living room and rushed to her front door to check on her stepson who was playing on the porch. When she reached the door, she saw [Myers] and another man running down the street toward her. At that point, Ms. Williams observed [Myers] attempt to force a large weapon into his pant leg, with the weapon extending from his armpit into his pant leg. She also observed [Myers'] dark complexion and the smirk on his face as the men ran past her and tuned the corner onto a connecting street. After the men left the area, Ms. Williams saw [victim] lying on the ground.

Just prior to the shooting, a few blocks away on Filmore Place, [Myers], along with Arnold Briggs and several others, had gathered on the steps of Mr. Briggs' home. At some point, [Myers] and a man identified only as Rico left the group with the stated intent to purchase Xanax from Wilmot Street. A short time after [Myers] and his companion left the area, the crowd gathered at Mr. Briggs' home heard a loud gunshot. Within minutes, [Myers] reemerged on the street, sweating and smiling, boasting that he had just shot [victim] in the chest. [Myers], carrying a large, double-barreled, sawed-off shotgun, stated that he shot [victim] in retaliation for the murder of [Myers'] friend a few weeks before.

At approximately 7:41 p.m., police received information of a shooting in the 2000 block of Wilmot Street. Arriving on the scene, Police Officers Cordero and Vasquez found [victim] lying face down in the street with a gaping hole in the lower left side of his torso, exposing his intestines. Police were unable to find any vital signs, and [victim] was transferred to Temple Hospital where he was pronounced dead at 8:12 p.m. At the scene, officers recovered small pieces of shotgun wadding. [Victim]'s death, ruled a homicide, was caused by a shotgun wound to the abdomen, from which projectiles struck his ribs, stomach, pancreas, aorta, liver, spleen and kidneys.

- 2 -

Following the shooting, the witnesses were interviewed by detectives and each identified [Myers] as the gunman. Ms. Wilder was interviewed by Homicide detectives the morning after the shooting but was not shown any photographs from which to identify [Myers]. Ms. Wilder was interviewed a second time, on August 11, 2011, where she identified [Myers] as the gunman from a photographic array. Ms. Williams was interviewed by Homicide detectives and, after becoming visibly upset, identified [Myers] as the gunman from a photographic array. Ms. Williams and Ms. Wilder subsequently participated in a lineup. Ms. Wilder did not successfully identify [Myers] at the lineup. However, Ms. Williams identified [Myers] as the gunman, explaining that [Myers'] face was etched in her memory from the day of the shooting. Mr. Briggs was also presented a photographic array, from which he selected [Myers] as the person who stated he was responsible for shooting and killing [victim].

In addition, William McNeil gave a statement to Homicide Unit detectives, wherein he stated that he learned from neighborhood acquaintances that a man named Rico was responsible for shooting [victim]. Approximately two (2) weeks after the shooting, Mr. McNeil encountered [Myers] and Rico, and relayed the information he had about the shooting. Rico explained that he wasn't responsible and hadn't been there at the time, while [Myers], laughing, stated "that's my work." [Myers] went on to state to the two men that after the shooting he discarded the clothing he wore that day and sold the gun. Pursuant to their investigation, an arrest warrant for [Myers] was prepared and executed on November 9, 2011.

Opinion, 1/20/16, at 4-7 ("1925(a) Op.") (internal citations omitted).

Following a jury trial, the jury found Myers guilty of third-degree murder and PIC. The trial court sentenced Myers to 22½ to 45 years'

incarceration. Myers did not file post-sentence motions. On June 29, 2015, he timely filed his notice of appeal to this Court.[2]

On appeal, Myers raises the following issue:

> ***Commonwealth v. Walker***[3] Overturned the Case Law Prohibiting Eyewitness Experts from Testifying. ***Walker*** is a New Rule and it Should Be Applied Retroactively to Mr. Myers's Case. U.S. Const. amdts. V, VI, VIII, XIV; Pa. Const. art. 1., §§ 8, 9, 23.

Myers' Br. at 4.

First, we must decide whether ***Walker***[4] applies retroactively to Myers' case and, if so, whether Myers preserved a ***Walker*** claim. Generally, "in Pennsylvania . . . we apply the law in effect at the time of an appellate decision." ***Amato v. Bell & Gossett***, 116 A.3d 607, 617 (Pa.Super. 2015). "Where an appellate decision overrules prior law and announces a new principle, unless the decision specifically declares the ruling to be

---

[2] Myers initially filed his notice of appeal on August 14, 2013. We quashed this appeal, however, due to prior counsel's failure to file a docketing statement in accordance with Pennsylvania Rule of Appellate Procedure 3517. The trial court reinstated Myers' appellate rights *nunc pro tunc* on June 10, 2015 and appointed current counsel. This timely appeal followed.

[3] 92 A.3d 766 (Pa. 2014).

[4] ***Walker*** held that "the admission of expert testimony regarding eyewitness identification is no longer *per se* impermissible." 92 A.3d at 792-93. It further held that "'such expert testimony would be limited to certain cases' and trial courts must exercise their traditional role in determining the admissibility of expert testimony." ***Commonwealth v. Selenski***, 117 A.3d 1283, 1285 (Pa.Super. 2015) (quoting ***Walker***, 92 A.3d at 787, 789-91).

prospective only, the new rule is to be applied retroactively to cases where the issue in question is properly preserved at all stages." *Commonwealth v. Cabeza*, 469 A.2d 146, 148 (Pa. 1983). "Thus, 'a party whose case is pending on direct appeal is entitled to the benefit of changes in law which occur before the judgment becomes final.'"[5] *Amato*, 116 A.3d at 617 (quoting *Commonwealth v. Brown*, 431 A.2d 905, 906-07 (Pa. 1981)).

Our Supreme Court has held that "[e]ven when a new rule of law is deemed to apply retroactively, however, it still applies only to matters where the question at issue was properly raised and preserved in the trial court and at all subsequent stages of the adjudication." *Commonwealth v. Freeman*, 827 A.2d 385, 395 (Pa. 2003). It is well established that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302; *see also Commonwealth v. Hawkins*, 441 A.2d 1308, 1312 n.6 (Pa.Super. 1982) ("[I]ssues, even those of constitutional dimension, cannot be raised for the first time on appeal.").

---

[5] While we quashed Myers' initial appeal due to prior counsel's failure to file a docketing statement, on April 22, 2014, Myers filed a petition pursuant to the Post Conviction Relief Act, 42 Pa.C.S. §§ 9541-9546, seeking to have his appeal rights reinstated, which was granted. For this reason, coupled with the fact that the Commonwealth does not dispute that Myers' case was on direct appeal at the time of the *Walker* decision – May 28, 2014 – we will treat his appeal as pending at the time *Walker* was decided. *See Commonwealth v. Selenski*, 117 A.3d 1283 (Pa.Super. 2015) (applying *Walker* retroactively).

Here, because Myers' case was on direct appeal at the time ***Walker*** was decided, ***Walker*** would apply retroactively to his case. Myers, however, has waived his claim. ***Cf. Selenski***, 117 A.3d at 1284 (addressing ***Walker*** claim and remanding for hearing where defendant attempted to admit expert testimony from "a leading expert on human memory, concerning the psychological factors that influence the accuracy of eyewitness identifications."). As Myers admits in his brief, his "trial counsel did not attempt to present an eyewitness expert, nor did he object to the then existing case law prohibiting him from introducing such testimony." Myers' Br. at 34. Indeed, Myers did not first raise his claim until he filed his second 1925(b) statement, after his appeal rights were reinstated. Because Myers failed to preserve his claim, we find this issue waived.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/2/2017